

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Charley Lockhart
State Treasurer
Austin, Texas

Dear Mr. Lockhart:     Attention: Mr. Wm. A. Harrison

Opinion No. 0-2250
Re: H. B. 78 Acts First Call-
ed Session 44th Legisla-
ture, authorizing the
creation of an industrial
revolving fund for the
Texas Prison System in
the sum of $50,000.00.

We have your recent inquiry propounding cer-
tain questions involving the construction of the above-
captioned House Bill No. 78, which letter and accompany-
ing questions are as follows:

"House Bill 78 of the Acts of the
First Called Session of the 44th Legis-
lature provided for the creation of an
Industrial Revolving Fund of the Texas
Prison System amounting to $50,000.

"After the effective date of the
act, representatives of the Comptrol-
ler's Department, Treasury Department,
Attorney General's Department, Texas
Prison System and the two Huntsville
banks conferred with each other and
worked out the plan for establishing
the Revolving Fund. Under the plan
adopted, the State Treasurer deposited
the money in the two Huntsville banks
($25,000 in each bank) from Treasury
general cash, the theory being that in
case a loss should be sustained, the

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

loss would be chargeable to the Prison System Funds on the books of the State Treasury and the State Comptroller and the Prison System recover its loss by disposing of the securities required by House Bill No. 78, to be deposited with the General Manager of the Prison System. The Huntsville Banks do not make charges against the deposits maintained with them by the State Treasurer but pay claims against the Prison System from another account with the understanding that the maximum amount to be paid is $25,000 from each bank. The Prison System sends its claims to the State Comptroller, who issues warrants on the State Treasury drawn against Prison Funds and these warrants are credited by the banks to the claims account against the Prison System.

"* * *

"Representatives of the State Auditor's Department, State Comptroller's Department and the State Treasury Department have discussed the change as recommended by Mr. King and have agreed that the following questions be submitted to you for answering:

"(1) Should the money now on deposit with the Huntsville Banks be withdrawn by the State Treasurer and warrants drawn on the Texas Prison Funds be substituted?

"(2) If your answer to question No. 1 is in the affirmative, would the Prison System have authority to use the $50,000 as a revolving fund by drawing checks against the funds on deposit with the Huntsville banks?

"(3) If your answer to question No.2 is in the affirmative, should the vouchers

submitted to the State Comptroller by the Prison System require the warrants to be issued payable to the Prison System or to the original claimants?

"(4) If the warrants should be drawn payable to the Prison System, what sort of a claim should be presented to the State Comptroller for issuance of the warrants?

"(5) If your answer to questions Nos. 1 and 2 are in the affirmative, and the Prison System pays an invalid claim, where does the responsibility lie?

"(6) If your answer to question No. 1 is in the negative, and the present plan is continued and an invalid claim is paid by one of the Huntsville Banks and charged against the account titled 'Claims Against the Texas Prison System,' does the bank have the right to offset any loss sustained against the special deposit maintained there by the State Treasury?

"(7) If you rule that the money should be withdrawn from the State Treasury by warrants and the warrants are issued and paid, does the State Treasurer have any further responsibility for the money withdrawn?

"(8) If your answer to question No. 1 is in the affirmative, should the warrants for placing the $50,000 in the Huntsville banks be made payable to the Texas Prison System or to the Huntsville Bank and Trust Company, Huntsville, Texas, and the First National Bank, Huntsville, Texas, for credit to the Prison Industrial Revolving Fund?

"(9) If your answer to question No. 1 is in the negative and the present plan is

continued and a loss should occur, would the loss be chargeable to the Prison Industrial Revolving Fund on the books of the State Treasurer and State Comptroller?"

Section 1 of H. B. 78 is as follows:

"From and after the effective date of this Act, the State Treasurer of the State of Texas shall deposit sufficient amount of money received by him from the General Manager of the Texas Prison System out of money earned by and belonging to the State Prison System in Huntsville, Texas, of Fifty Thousand Dollars ($50,000), or so much thereof as may be necessary to create a fund of Fifty Thousand Dollars ($50,000) to be known as the Industrial Revolving Fund of the Texas Prison System, to be used by said Prison System in the purchasing of supplies and materials for tag plant, shoe and print shop and other industries and delivery of finished products as provided in the General Appropriation Bill for said System, and the State Treasurer shall at all times keep said Industrial Revolving Fund up to the maximum amount out of funds above provided, and said funds shall be used for the prompt payment in cash of all expenses properly payable out of said fund as appropriated by the Legislature in the General Appropriation Bill, such funds to be deposited by the State Treasurer in equal amounts in the Huntsville Bank and Trust Company at Huntsville, Texas, and the First National Bank at Huntsville, Texas, and said banks shall deposit with the General Manager of the Prison System, bonds or other securities to be approved by the Attorney General of the State of Texas sufficient to secure said deposit."

It is the opinion of this department that your questions should be answered as hereinafter stated, observing for convenience sake the numbering given by you.

1. Question No. 1 should be answered in the affirmative. Section 1 of the Act in question authorizing the State Treasurer to create the revolving fund requires him to create the same out "of money received by him from the General Manager of the Texas Prison System out of money earned by and belonging to the State Prison System in Huntsville, Texas." The fund as it has been created and now exists was not, therefore, constituted out of the proper monies, but on the contrary, appears to have been created with Treasury general cash. This mistaken method should be corrected in the manner indicated by this answer.

2. The Prison System would have authority to use the revolving fund for all lawful purposes, but not by "drawing checks against" it as a depositor would.

Section 4 of H. B. No. 78 declares:

"Payment made from the Industrial Revolving fund shall be made upon duly authenticated certificate by the General Manager of the State Prison System and shall be paid by the State Comptroller of Public Accounts by proper warrants drawn on said fund as now required by law for the payment of other charges against the State of Texas."

This clearly indicates that the Revolving Fund thus set apart is nevertheless a State fund, subject to be drawn against by State authority and not to be checked out upon the check of the State Prison System or any representative of the System.

3. Vouchers submitted to the State Comptroller and the warrants based thereon should be in the name of the person entitled to payment from such fund. The vouchers need only to be properly authenticated by the Prison System to authorize such payment.

4. If by "warrants" in connection with your question 4, you refer to warrants issued to or for the benefit of claimants for sales to the Prison System, this question is answered by what we have said in answer to question 3.

If, however, the word "warrants" is used in this question 4 as indicating the means of creating or restoring the depleted minimum sum of the Revolving Fund, our answer to this question is that the same should be in favor of the depositee banks for deposit by State Treasurer Industrial Revolving Fund Texas Prison System.

5. Any authorized administrative officer of the Prison System who approves, or otherwise authorizes and induces the execution and payment of a warrant out of the Revolving Fund when no valid claim exists therefor, would be civilly liable for any loss thereby to the State of Texas directly, or by subrogation to any other person or officer who had been compelled to pay such a loss. Of course, any person invoking the doctrine of subrogation or seeking a recoupment or indemnity in anywise would himself have to be free from any negligence or culpability whatever in respect to the misapplication of the fund.

6. This question need not be answered in view of the fact that we have not answered question No. 1 in the negative.

7. Under our interpretation of the Act in question, the State Treasurer's duty and liability abide and continue with respect to the Revolving Fund until the same has been lawfully paid out to proper claimants, or otherwise fully accounted for. In other words, the Revolving Fund itself is public money in the possession of the State Treasurer to be disbursed and accounted for as other public funds coming into his hands.

8. This question has already been answered in this reply, to the effect that the instruments of deposit should be payable to the respective depositee banks.

9. This question need not be answered, in

view of the fact that we have not answered question No. 1 in the negative.

We are not unmindful of Item 17 in the Biennial appropriation made by the 46th Legislature for the Prison System. This item re-appropriates the $50,000.00 originally appropriated for the creation of this Fund, and makes a further appropriation from the same source of an additional $50,000.00, making a total in the Industrial Revolving Fund of $100,000.00. It authorizes the General Manager of the Prison System to issue a voucher upon the Fund "which shall be sent to the Board of Control and the State Comptroller for approval and registration, and said Comptroller shall immediately return said voucher, if found to be correct, to the Cashier of the Prison System, who shall issue a draft upon the bank or banks enumerated herein in payment of said voucher."

This method of disbursement of the Fund is apparently in conflict with what we have said above.

We have already quoted Section 4 of H. B. No. 78 with reference to the manner of paying out said fund. We are of the opinion the language of the 1939 Appropriation Act is not controlling and can have no effect to change the manner of keeping payment or disbursement of the Fund provided for in H. B. No. 78.

H. B. No. 78 is a general law and it is not the province of an appropriation act to amend or repeal a general statute. The General Appropriation Act could possibly have the legal effect to repeal the general law, upon complying with all constitutional requirements and limitations as to legislation, but such is not the usual and ordinary effect.

In Conley v. Daughters of the Republic of Texas (the Alamo case) 151 S. W. 877, Chief Justice Fly said:

> "It was never contemplated that a valid existing law should be repealed by an appropriation of money, even though, as is not the case in this instance, it be totally inconsistent with the terms of the existing law. * * *

ative

"Admitting that a repealing act might be sandwiched among the various and sundry items of a general appropriation act, still such an act would not be a subject or account for and on which moneys are appropriated, and should be expressed in the title. It was never contemplated that an act should be repealed by an item in an appropriation bill, and there is nothing in the item appropriating the $5000.00 to improve the Alamo property that evinces any desire upon the part of the Legislature to take the custody of the property from those to whom it had been entrusted by law. * * *

"Even if the item which is dignified by appellants by being called a 'repealing act' had been intended as an amendment of the act of 1905, it would not be in harmony with Article III, Section 36 of the Constitution which provides that no law shall be amended by reference to its title, but in such case the act reviewed or the section or sections amended shall be re-enacted and published at length."

The provisions of Item 17 of the 1939 Biennial Appropriation Bill are not in irreconcilable conflict with the statutes contained in H. B. 78, but if such was the case, nevertheless, H. B. No. 78 has not been amended in the Appropriation Act in the manner just pointed out by the Constitution; and, moreover, the caption or title to S. B. No. 427 -- the 1939 Biennial Appropriation -- contains nothing with respect to this subject, for which reasons, in any event, the provisions of H. B. No. 78 with reference to disbursements are left intact.

Trusting that this reply will have answered your questions satisfactorily, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer
Assistant

APPROVED JUN 7 1940

OS-MR    Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

APPROVED OPINION COMMITTEE BY CHAIRMAN